[Civ. No. 12017. First Dist., Div. One. June 29, 1943.]

HENRY VINER, Appellant, v. CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents; RUSSELL V. RUSH, Intervener and Respondent.

Joseph T. Curley and Marvin C. Hix for Appellant.

John J. O'Toole, City Attorney, Norman Sanford Wolff,

Deputy City Attorney, and L. R. Bunney for Defendants and Respondents.

Thomas Maloney Jr., for Intervener and Respondent.

PETERS, P. J.—Plaintiff appeals from a judgment against him in an action for declaratory relief by which he seeks to determine his right to promotion from foreman janitor to head janitor in the Civil Service System of the City and County of San Francisco. The plaintiff and two others took a promotional examination given on April 7, 1939, to establish an eligible list for the position of head janitor. Plaintiff placed third. Intervener Rush passed first, and was assigned to the position when it became vacant on June 1, 1939, with the retirement of the incumbent. Plaintiff contends that under the charter of the city and county of San Francisco in effect until January 8, 1932, and rules adopted by the defendant commission pursuant thereto, he was entitled to promotion without taking an examination, and that this right was continued by §142 of the new charter, which provides that: ''The civil service rights, acquired by persons under the provisions of the charter superseded by this charter, shall continue under this charter.'' The other participants in the examination did not become foreman janitors until after the new charter went into effect.

Plaintiff further contends that intervener Rush was not entitled to take the examination, for the reason that it was open only to foremen janitors, and Rush, in the analysis of plaintiff, was not a foreman janitor. Morris, the other man who took the examination, did not intervene, and is not a party to these proceedings. The trial court decided against plaintiff on both contentions.

Plaintiff brought the present suit on July 19, 1939. The commission concedes that he is not estopped to urge his right to the position without examination because he took the examination without protest. The right to bring an action for declaratory relief against a municipal corporation or other subdivision of the state is upheld in *Hoyt* v. *Board of Civil Service Commissioners*, 21 Cal.2d 399 [132 P.2d 804].

Plaintiff was first employed by the city and county in 1902. In 1905 he and other janitors in the employ of the city and county under the Department of Public Works took a civil service examination. Plaintiff was listed as number nine on

the list made up from that examination. He testified that all who took the test received a grade of 100%. The basis for the order of listing does not appear. In 1907, or prior thereto, plaintiff was assigned by the Department of Public Works to act as assistant head janitor. Bellett, who was number one on the list, acted as head janitor. It was Bellett's retirement in 1939 which opened the position of head janitor. Of the persons who took the janitorial examination in 1905, plaintiff and Bellett were the only ones in the employ of the city and county at the date of the 1939 examination.

Prior to 1930 the position of head janitor was not separately classified by the defendant commission in its listed classification of positions. In the classification as it appears in the 1916 edition of "Charter Provisions, Rules and Classification," issued by the commission, there is the single classification "Janitors" for all types of janitorial work. (p. 65.) In the 1924 edition the classification appears "Janitors (includes head janitor and window washers)." (p. 82.) In November, 1930, a new classification was adopted with a Janitorial Subdivision listing six classes, as follows: C 102 Janitress; C 104 Janitor; C 106 Sub-Foreman Janitor; C 108 Foreman Janitor; C 110 Head Janitor; C 112 Supervisor of School Janitors. A Window Cleaning Subdivision included two classes in the new classification: C 202 Window Cleaner and C 204 Sub-Foreman Window Cleaner.

On November 8, 1933, the commission adopted a resolution to determine the status of employees appointed under the old classification who were working under the new classification. Bellett was declared entitled to hold the position of head janitor under the new classification, and plaintiff to hold a position of the class C 108 Foreman Janitor. No other employee was listed as occupying a foreman janitor position. The duties of that position as set forth in the classification of November 17, 1930, are as follows: "Assists a Head Janitor in supervising a large group of Janitors or directs a large group of Janitors such as those at the Hall of Justice; looks after supplies; may keep time of subordinates." Plaintiff had been performing duties of this type for many years and continued to do so at all times after the reclassification.

Intervener Rush, who, by his complaint in intervention, placed in issue his right to hold the position of head janitor, was first employed as a janitor by the city and county on June 1, 1927, from a list made up from an examination. His

class under the new classification was C 104 Janitor. From time to time he served temporarily as a foreman janitor between October, 1933, and July, 1936. His regular position as janitor was in the rooms of the Civil Service Commission. In 1935 he took an examination to establish an eligible list for the position of foreman janitor. On June 15, 1936, the commission reclassified as C 108 Foreman Janitor the position which he held as C 104 Janitor in the offices of the commission. On July 20, 1936, Rush was appointed to this position as reclassified. He held it at the time he took the 1939 examination for head janitor.

Plaintiff contends that the commission abused its discretion and acted without legal authority in reclassifying the position in the offices of the commission as of the class C 108 Foreman Janitor in 1936, for the reason that it did not involve duties prescribed for that class in the provision of the 1930 classification quoted above. For such reason, plaintiff contends, Rush did not hold a position as a foreman janitor and was ineligible to take the promotional examination for head janitor, open only to those who were foreman janitors. By his complaint in intervention Rush put in issue the validity of the 1936 order reclassifying his position as C 108 Foreman Janitor.

Plaintiff's main contention is that he was entitled to the position of head janitor without examination. This contention rests on the proposition that he had that right under the old charter, in effect until January 8, 1932, and rules of the commission pursuant thereto, and that §142 of the new charter, quoted in the opening paragraph above, preserved such right. Rush and Morris did not become foreman janitors until after the new charter went into effect, and hence that charter is the sole measure of their rights to the position of head janitor.

The old charter, like the new, made ascertained merit and promotional examination the basis for advancement from class to class. (Old charter: Stats. 1899, p. 241, art XIII ,§8; new charter: Stats. 1931, p. 2973, §146.) But the old charter in 1913 (Stats. 1913, p. 1611, amending art. XIII, §2) authorized the commission to establish grades within classes. On the theory that it could provide for advancement from grade to grade within a class without promotional examinations, the commission adopted rule 38. That rule provided for advancement to a vacancy in a higher grade by the person in the

next lower grade having the highest rating for service, without promotional examination.

Plaintiff contends that prior to the reclassification of November, 1930, he held a position in the next grade below that of Bellett, head janitor. After the November, 1930, reclassification the position of head janitor was in a different class from lower janitorial positions, rather than merely in a different grade. If the result of placing the head janitor position in a separate class was to render rule 38 inapplicable to that position after 1930, then plaintiff had no right under the old charter to advance to the position without examination. The consequence would be that §142 of the new charter, which went into effect in 1932, could preserve no such right to him because such right no longer existed when the new charter went into effect. Plaintiff contends, however, that the benefit of rule 38 survived the reclassification of 1930 by reason of a 1925 amendment to the old charter which provided as to any classification the commission might make "that such classification and grading shall not operate to adversely affect the civil service classification or duties of any person holding a position at the time of the adoption of this amendment." (Stats. 1925, p. 1166.) Plaintiff contends that to take from one in the class of janitor in the grade next below head janitor the right to advance to the head janitor position without examination is to affect adversely the former classification.

It is a premise of plaintiff's argument that he was in the next grade below Bellett. Rule 38 as it appears in the 1924 edition of Charter Provisions, Rules and Classification, establishes grades based on salary applicable to all classes in the civil service. Positions carrying a salary of more than $250 and not more than $300 were grade eight. After August 1, 1924, Bellett received a salary of $260 and hence was in such grade. Plaintiff received a salary of $180, which placed him in grade five, for the salary range between $175 and $200. If no janitor received a salary in the intervening grades, six and seven, plaintiff was in the grade next below Bellett in the janitorial class. A reasonable interpretation of the evidence is that there was no janitor in the intervening grades when Bellett retired nor prior thereto. One Ralston also acted as assistant head janitor until his retirement in 1932, but it is not shown that he received a salary which placed him in a higher grade than plaintiff. Plaintiff testified to the foreman of the night gang receiving $5.00 more a month than he

464

did, but this would not place him in a different grade from plaintiff.

 Conceding that plaintiff was in the grade next below Bellett, his contention nevertheless cannot be upheld. Plaintiff rests his case on rule 38, but overlooks rule 35 as it stood when the November, 1930, reclassification was made. Rule 35 required the position of head janitor to be filled by promotive examination. The rule in its 1930 form is as follows:

"All positions of Foremen and Sub-foremen of the trades and skilled occupations shall be separately classified, and, when practicable, shall be filled by promotive examination. For each such position to be filled, the three highest eligibles, of the class involved, shall be certified.

"All such Foremen and Sub-foremen regularly holding their positions on June 11, 1930, under the rules then in force, shall continue to hold their positions without examination and may be removed therefrom only for cause, under Rule 23."

The janitorial class was expressly included in the "trades and skilled occupations" when rule 35 was adopted in its 1930 form prior to the November, 1930, reclassification. Division N of the classification preceding that of 1930, in which division the class of janitors was listed, is entitled "Mechanical Service (includes the trades and skilled occupations not classified elsewhere)." (Charter Provisions, Rules and Classification (1924 ed.) p. 81.)

That the head janitor was a foreman within the meaning of rule 35, we have no doubt. That rule rendered rule 38 inapplicable to the head and sub-supervisory positions of any class in the trades and skilled occupations. The positions which Bellett and plaintiff held were not taken out of rule 35 because the Board of Public Works described them as head janitor and assistant head janitor. Nor was rule 35 inapplicable to the head supervisory position because the reclassification of 1930 gave to it the title head janitor. The question is whether the position occupied by Bellett was that of foreman within the meaning of rule 35 before the reclassification. We hold that it was. The requirement of the rule as to promotive examinations applied notwithstanding the head position was not separately classified until November, 1930. It follows that advancement to that position under the old charter and rules, as well as under the new, was by promotional examination.

That the designations foremen and sub-foremen were intended to relate to the supervisory positions in any class in Division N regardless of the departmental title, is indicated by the two earlier forms of the rule. As the rule appears in the 1916 edition of Charter Provisions, Rules and Classification (p. 48) it refers to foremen, inspectors and superintendents as overseers. The rule authorized departmental heads to appoint a temporary sub-foreman, but provided that all other positions of overseers should be classified according to duties and filled by examination. In the 1924 edition (p. 58), Rule 35 is entitled "Overseers." It provides that where positions of "overseers, foremen or chiefs" are not separately classified, "the appointing power may select the senior employee of a class to act as overseer, foreman or chief of such class of employees." Note that the rule provides for the appointment of the senior employee, rather than the employee with the highest rating for service as under rule 38. Before the 1930 reclassification the rule had been changed again to require the chief position to be filled by promotive examination. It is apparent that it was rule 35, and not rule 38, which regulated the filling of the head janitorial position under the old charter. Since rule 35 required a promotional examination, plaintiff had no right under the old charter to advance to the head janitor position without examination and hence such right was not preserved to him by §142 of the new charter.

Defendant commission and the intervener contend that § 142 preserved rights which plaintiff had under the old charter but not rights which he had under rules enacted pursuant thereto; that if rule 38 was applicable to the head janitor position, the new charter did not guarantee to plaintiff the benefit of that rule or any other. This argument is unsound. Rules adopted by the commission under the rule making power conferred by the charter, and not in conflict with it, have the same force and effect as the charter. (*Mitchell* v. *McKevitt*, 128 Cal.App. 458, 461 [17 P.2d 789]; *Bruce* v. *Civil Service Board*, 6 Cal.App.2d 633, 637 [45 P.2d 419].) For this reason we rest our decision on the proposition that it is rule 35, rather than rule 38, which is decisive. Under this conclusion it is unnecessary to consider the effect of the 1925 charter amendment, quoted above, as a restriction on the power of the commission to cut off rights under rule 38 through reclassification.

Reference has heretofore been made to the status resolution of 1933 which found Bellett to be occupying the position of head janitor under the new classification, and plaintiff the position of foreman janitor. That resolution contained provisions which plaintiff contends constitute a recognition of a right to succeed to the head janitor position without examination. If plaintiff had such right under the old charter and rules enacted pursuant to it, then §142 preserved the right without need of its recognition by the commission. If he did not have the right under the old charter, then it was beyond the power of the commission to accord it to him by resolution. The new charter provides for advancement on the basis of promotional examinations and ascertained merit where practicable. (*Allen* v. *McKinley*, 18 Cal.2d 697 [117 P.2d 342].) The commission could not by general resolution provide a different basis of advancement for those who had been in the civil service under the old charter. Plaintiff recognizes this in his brief when he says: "Plaintiff does not look to it [the status resolution] for the creation of his right, but only to it as a recognition of the right he had under the old charter and rule 38." We conclude that plaintiff was not entitled to succeed to the position of head janitor without examination.

Plaintiff makes the additional point that Rush was improperly assigned to the head janitor position for the reason that he was ineligible to take the promotional examination for that position, which was open only to those who were foreman janitors; that Rush was not legally a foreman janitor. The facts are, as outlined above, that Rush became a janitor in 1927. In 1935 he was placed on an eligible list for the class C 108 Foreman Janitor as a result of an examination. At this time his position as janitor, class C 104, was in the rooms of the Civil Service Commission. In June, 1936, the commission changed the classification of that position from class C 104 Janitor to C 108 Foreman Janitor. On July 20, 1936, Rush was assigned to the position, which he held until he was placed in the head janitor position after passing the 1939 examination in first place.

Plaintiff's contention is that the commission abused its discretion and thereby acted without authority of law in changing the classification of the particular position which Rush held from class C 104 to C 108 in 1936 for the reason that it involved no duties of the type prescribed in the official classification for the position of foreman janitor, but only

ordinary janitor duties. The duties of the class C 108 Foreman Janitor are as follows: "Assists a Head Janitor in supervising a large group of Janitors or directs a large group of Janitors such as those at the Hall of Justice; looks after supplies; may keep time of subordinates." Plaintiff sought to show, through interrogation of Rush, that the janitorial position in the offices of the Civil Service Commission did not involve any duties whatsoever of the type prescribed for class C 108 Foreman Janitor at any time, either before or after the reclassification of that position. Plaintiff's purpose was to establish the commission's abuse of discretion. The court excluded the evidence on the theory that plaintiff could not make such an attack on the action of the commission. We are of the view that the court erred. This ruling was prejudicial. Plaintiff has an interest in eliminating Rush, since in such event if Morris takes the position plaintiff's name will be the only one, rather than second, on the eligibility list.

The complaint as first filed alleged: "That said Russell V. Rush has never held a position of foreman janitor in the employ of said City and County of San Francisco and for such reason was not qualified to take such examination." During the trial the following was added by amendment: "That said Russell V. Rush never did while employed in the position of Janitor in the rooms occupied and used by said Civil Service Commission have supervision of a large group of janitors or supervision of any janitors nor did he direct a large or any other group of janitors such as those at the Hall of Justice, nor did he look after supplies; never kept the time of subordinates; never assisted the Head Janitor in supervising a large group of janitors and never performed any duties or work except of the kind described under the duties attached to the classification of C 104 Janitor as set forth in the classification adopted about November 17, 1930, by said Civil Service Commission; *that the reclassification of the position occupied by the said Russell V. Rush by said Commission was illegal and without any authority in law* and that said Commission abused its discretion in permitting said Russell V. Rush to take said examination so held as aforesaid on April 7, 1939." (Italics added.)

Defendant commission and the intervener note that the allegation is that while employed as *janitor* Rush did not perform duties of the type required of a foreman janitor. What he did as janitor is immaterial, they say. The purpose of this

allegation is, however, to show that it was improper to reclassify the position of janitor which Rush was filling as of the class foreman janitor because he was not performing duties of the type prescribed for a foreman janitor job.

Rush became a party to the action by his complaint in intervention in which he alleged that the commission reclassified the position which he held pursuant to the power and authority vested in it by the charter, and that he performed the duties of foreman janitor. The prayer was that the court determine that intervener at all times since June 1, 1939, had been entitled to the head janitor position.

We are of the view that the pleadings and offer of proof sufficiently present the question of the commission's abuse of discretion in reclassifying the position of janitor which Rush held.

The judgment is affirmed insofar as it determines that plaintiff was not entitled to advance to the position of head janitor without examination. Insofar as it determines Rush's right to the position of head janitor the judgment is reversed for a trial on the merits on that issue. Each side shall bear its own costs on appeal.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied July 29, 1943, and appellant's petition for a hearing by the Supreme Court was denied August 26, 1943.