[Civ. No. 16155. Third Dist. Nov. 15, 1978.]

JOHN LOUIS CHAVEZ, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF SACRAMENTO COUNTY,
Defendant and Respondent;
SACRAMENTO COUNTY SHERIFF'S OFFICE,
Real Party in Interest and Respondent.

**COUNSEL**

Nancy B. Reardon for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

John B. Heinrich and L. B. Elam, County Counsel, and Robert S. Shelburne, Deputy County Counsel, for Real Party in Interest and Respondent.

**OPINION**

**PARAS, J.**—Opinion on rehearing. On April 16, 1976, plaintiff John Chavez, a former probationary employee with the Sacramento County Sheriff's Department, filed a petition for writ of mandate in the superior court. He alleged that he had been released from employment as a result of discriminatory practices and had appealed such release to the Sacramento County Civil Service Commission (Commission) which after hearing denied the appeal; he had thereupon sought a transcript of the taped hearing to submit to the superior court for review (pursuant to Code Civ. Proc., § 1094.5) and was informed that one day's tape proved so defective that no certified transcript could be prepared from it; he therefore asked the superior court to order the Commission to allow him "to reconstruct the record from the point at which the tapes become defective forward."[1]

---

[1]Plaintiff states inconsistently that it would be impossible to reconstruct the evidence and also that the Commission should be ordered to allow him to "reconstruct the record."

The Sacramento County Sheriff's Office (Sheriff), the real party in interest, filed a general demurrer to the petition asserting failure to state a cause of action because the Commission had no jurisdiction to entertain the appeal in the first place (the Sheriff had unsuccessfully made this same objection to the Commission). On June 18, 1976, after hearing, the demurrer was sustained without leave to amend, the court stating that the "Commission had no authority to act in the premises." Judgment of dismissal as to both the Sheriff and the Commission was then entered on June 24, 1976. Plaintiff appealed. He contends that the Commission had jurisdiction to hear appeals of probationary employees and that it must therefore provide him with a proper transcript of the proceedings to permit review under Code of Civil Procedure section 1094.5.

I

The Commission entertained the appeal on the authority of its own rule 8.3 which authorizes appeal from the dismissal of a probationary employee only where discrimination is asserted.[2] The Sheriff insists that the Commission had no authority to adopt such a rule, hence that it is invalid. We note that the Sheriff does not maintain that he has any right to discharge probationary employees for reasons related to race, color, creed, sex, national origin, or political affiliation. His contention simply is that the Commission has no jurisdiction under the Charter of the County of Sacramento, as amended (Charter), to involve itself in the question and that plaintiff and others similarly situated should present such claims to other tribunals such as the Fair Employment Practices Commission (Lab. Code, § 1410 et seq.) and the Federal Equal Employment Opportunities Commission (42 U.S.C.A. § 2000e et seq.).

The Commission was created by the Charter (art. XVI, § 71-A) and derives its powers therefrom. (Cal. Const., art. XI, §§ 3, 4; Charter of the County of Sacramento, art. XVI, §§ 71-A - 71-I (Stats. 1972, res. ch. 174, pp. 3505-3512); *Livingstone* v. *MacGillivray* (1934) 1 Cal.2d 546, 552-554 [36 P.2d 622]; *Curphey* v. *Superior Court* (1959) 169 Cal.App.2d 261, 265 [337 P.2d 169].) ■ It has limited jurisdiction within which to act and can only exercise the powers expressly conferred upon it or which are

---

[2]Rule 8.3 of section 8 of the County of Sacramento Civil Service Rules (eff. August 15, 1974) provides:

"During the probationary period, an employee may be released at any time. Written notice of release stating the reason for release shall be furnished the probationer by the Department Head or Agency Administrator, with a copy to the Civil Service Commission.

"Persons released during the probationary period may appeal such release only upon grounds of discrimination based on race, color, religion, sex, national origin, or political belief."

necessarily implied therefrom. (*Heap* v. *City of Los Angeles* (1936) 6 Cal.2d 405, 407 [57 P.2d 1323]; *Cook* v. *Civil Service Commission* (1911) 160 Cal. 598, 600 [117 P. 662]; *Wheeler* v. *City of Santa Ana* (1947) 81 Cal.App.2d 811, 816 [185 P.2d 373].) The rules promulgated by the Commission, within the scope of their application, have the force and dignity of law, provided they are within the authority contemplated by the Charter. (*Wilson* v. *Civil Service Com.* (1964) 224 Cal.App.2d 340, 345 [36 Cal.Rptr. 559]; *Bruce* v. *Civil Service Board* (1935) 6 Cal.App.2d 633, 637 [45 P.2d 419].) Since the Commission owes its existence to the Charter, it cannot alter that instrument no matter how altruistic its motives. (See *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419 [128 Cal.Rptr. 183, 546 P.2d 687]; *Wilson* v. *Civil Service Com., supra,* 224 Cal.App.2d at p. 345.)

The following Charter provisions are pertinent to the inquiry:

Article XVI, section 71-B: "(a) The commission shall establish rules regarding the selection of employees for, and the classification of, civil service positions.

". . . . . . . . . . . . . . . . . .

"(c) The commission shall make final decisions on appeals from disciplinary actions involving civil service employees with permanent status, provided that appeal procedures mutually agreed on by the Board of Supervisors and recognized employee organizations shall substitute for appeal procedures established by the commission.

"(d) The commission shall make final decisions on appeals involving alleged improper action under, or the denial of any rights provided by, this article or the rules adopted thereunder. The commission's authority in this regard pertains only to examinations and other matters under the jurisdiction of the commission pursuant to this article."

Article XVI, section 71-F: "(f) No person in county service, or seeking admission thereto, shall be appointed, reduced, removed, or in any way favored or discriminated against because of his race, color, creed, sex, national origin or political affiliation. This provision is not intended to prevent the establishment of special programs for the employment of economically, socially, physically or mentally deprived persons."[3]

---

[3]This provision of article XVI (art. XVI in general establishes and enumerates the duties and powers of the Commission) is virtually identical to section 61 of article XIV (art. XIV deals in general with "Labor and Employment").

Article XVI, section 71-G: "Each person appointed to a position in a civil service classification shall serve a period of probation not to exceed twelve months. The commission shall determine the length of the probationary period for each class. Probationary periods of more than six months shall not be established unless the commission finds that a longer probationary period is appropriate on the basis of the cycle of the work performed or because the duration of required training is such that it is not possible to adequately evaluate employee performance within a six-month period. A probationary employee may be rejected during the probationary period. At the expiration of the probationary period the employee shall attain permanent status in the class."

Article XVI, section 71-H: "(a) Any employee who has permanent civil service status may for cause be removed, suspended or reduced in rank or compensation by the appointing authority, or any person authorized by him, by notifying the employee of the action, pending the service upon him of an order in writing stating specifically the reasons for the disciplinary action.

"(b) The disciplinary action is valid only if the written order is filed with the commission and a copy is served on the employee either personally or by mailing a copy to the employee by certified or registered mail not later than 15 calendar days after the effective date of the disciplinary action.

"(c) Any person against whom disciplinary action is taken as provided in this section may appeal by filing a written appeal with the commission not later than 15 calendar days after service of the order.

"(d) The commission shall provide for the impartial hearing and determination of appeals. The determination may either affirm, modify, or revoke the order. The appellant shall be entitled to appear personally, produce evidence, and to have counsel at a public hearing.

"(e) The findings and decision of the commission shall be certified to the official from whose order the appeal was taken, and shall forthwith be enforced and followed by them.

"(f) Appeal procedures mutually agreed on by the Board of Supervisors and recognized employee organizations shall substitute for appeal procedures provided by the commission."

■ It is a fundamental rule of statutory construction that the court should ascertain the intent of the enacting authority so as to give effect to the purpose of the law. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749].) If possible, effect should be given to the enacted provision as a whole so that no part of it will be useless or meaningless—a construction making some words surplusage is to be avoided. (*Ibid; People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]; *People* v. *Cheatham* (1975) 50 Cal.App.3d 592, 595 [123 Cal.Rptr. 361].)

The Sheriff points to section 71-B(c) and to the fact that it specifically refers to appeals to the Commission "involving civil service employees with permanent status." It does not include employees with probationary status. Nowhere else is such a right expressly afforded to probationary employees, and sections 71-G and 71-H further show the contrasting treatment of the two types of employees. Section 71-G expressly deals with probationary employees and states simply that they "may be rejected during the probationary period;" no appeal procedures are provided. Section 71-H on the other hand expressly deals with permanent status employees and sets forth detailed procedures for their discipline, one of which is appeal to the Commission. Thus the Sheriff argues that probationary employees have no appellate access to the Commission, none obviously having been intended; the maxim "*expressio unius est exclusio alterius*" is fully applicable. (*Collins* v. *City of San Francisco* (1952) 112 Cal.App.2d 719, 731 [247 P.2d 362].)

■ We agree with the Sheriff's contention and with his reasoning, except in the specific situation here involved. While a probationary employee does not generally have a right of appeal to the Commission, the Commission has correctly recognized its jurisdiction in the limited case where the appeal involves a claim of discrimination because of race, color, creed, sex, national origin, or political affiliation.

In addition to jurisdiction over appeals involving discipline of permanent employees (§ 71-B(c)), the Commission in section 71-B(d) is given jurisdiction over appeals involving "alleged improper action under, or the denial of any rights provided by, *this article or the rules adopted thereunder.*" (Italics added.) To what appeals does section 71-B(d) refer? "This article" means article XVI, which is captioned "Personnel Administration" and which establishes the Commission (§ 71-A), defines its powers and duties (§ 71-B), provides for administration of personnel services and programs by the county executive under the Commission's supervision (§ 71-C), delineates the county employees who occupy civil

service status (§ 71-D), provides for classification (§ 71-E) and selection (§ 71-F) of civil service employees, establishes probationary periods (71-G), and deals with removal, suspension and demotion of permanent employees (§ 71-H). "Rules adopted thereunder" refers inter alia to section 71-B(a), which directs the Commission to "establish rules regarding the *selection* of employees." (Italics added.) In covering the subject of "selection," section 71-F includes subsection (f) which as above quoted provides that no one seeking employment with the county shall either be favored or discriminated against because of race, color, creed, sex, national origin, or political affiliation.

It follows that the Commission may entertain an appeal from alleged improper action under (or the denial of a right provided by) section 71-F(f), or Commission rule 8.3 adopted under section 71-F(f), a part of article XVI. The Commission correctly construed the extent of its authority in this regard.[4]

The Sheriff argues that the second sentence of section 71-B(d), which limits the Commission's appellate authority to "examinations and *other matters under the jurisdiction of the commission pursuant to this article*" (italics added), negates our conclusion. We do not so read it. The emphasized language renders the second sentence consistent with our analysis of the first.

*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559 [55 Cal.Rptr. 505, 421 P.2d 697], is not helpful to the Sheriff. The Charter provisions there (65 Cal.2d at pp. 565-566) were far less comprehensive than those which concern us here.

## II

The Sheriff's contention that Code of Civil Procedure section 1094.5 is inapplicable to this case is without merit.

■ While it is true that section 1094.5 is applicable only when a hearing and the taking of evidence are required by law (Code Civ. Proc., § 1094.5, subd. (a); *Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 599 [297 P.2d 967]), such hearing was required in this case. As we have held,

---

[4]It is clear that the limited grounds of appeal secured to probationary employees under section 71-F(f) of article XVI are available to all victims of such discrimination regardless of race, color, sex, or national origin. (*University of California Regents* v. *Bakke* (1978) 438 U.S. 265, 292-293 [57 L.Ed.2d 750, 772-773 [98 S.Ct. 2733] (opn. of Powell, J.); *Bakke* v. *Regents of University of California* (1976) 18 Cal.3d 34, 51, fn. 18 [132 Cal.Rptr. 680, 553 P.2d 1152].)

Commission rule 8.3 granted to plaintiff the limited right of appeal. The Commission's rules do not specifically provide for a hearing and evidence when a probationary employee has been released because of race, etc. But where there is no specific provision for a hearing, a hearing requirement is to be implied, absent a contrary intent expressed in the provisions creating the right of appeal. (See *McCullough* v. *Terzian* (1970) 2 Cal.3d 647, 657 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266]; *Ratliff* v. *Lampton* (1948) 32 Cal.2d 226 [195 P.2d 792, 10 A.L.R.2d 826]; Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 2.5, pp. 11-12, (Cont.Ed.Bar 1975 Supp.) § 2.5, pp. 6-8.) There being no contrary intent expressed in either the Charter or the rules, we hold that an evidentiary hearing was required and section 1094.5 applies.

### III

█ Plaintiff is entitled to have the entire record of the administrative proceedings presented to the court for review. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].) Where a full record has not been kept, the parties may reconstruct the record; if unable to do so, a new hearing must be held so as to provide an adequate record. (*Hadley* v. *City of Ontario* (1974) 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513]; see *Keeler* v. *Superior Court, supra,* 46 Cal.2d at pp. 600-601; *Aluisi* v. *County of Fresno* (1958) 159 Cal.App.2d 823, 828 [324 P.2d 920].)

The judgment is reversed with directions to the trial court to determine whether the entire record can be feasibly reconstructed and otherwise to proceed consistently herewith.

Puglia, P. J. and Reynoso, J., concurred.

The petition of the real party in interest and respondent for a hearing by the Supreme Court was denied January 11, 1979.