[S.F. No. 22717. In Bank. June 16, 1970.]

MARY McCULLOUGH et al., Plaintiffs and Respondents, v.
HRAYR TERZIAN, as Director, etc., et al.,
Defendants and Appellants.

648

## COUNSEL

Thomas C. Lynch, Attorney General, Elizabeth Palmer, Deputy Attorney General, Richard J. Moore, County Counsel, and Ben Zuppan, Deputy County Counsel, for Defendants and Appellants.

Thomas L. Fike, Thomas Schneider, Burton Danziger, David Nawi and Clifford Sweet for Plaintiffs and Respondents.

## OPINION

**MOSK, J.**—The Department of Social Welfare has adopted a regulation under which persons who are receiving welfare payments through certain aid programs[1] but who are deemed by a county welfare department as

---

[1] The programs to which the regulation applies are all classified as categorical assistance programs. They are supported by federal grants-in-aid but administered by the states according to regulations of the Secretary of Health, Education and Welfare. (42 U.S.C. §§ 301 et seq., 601 et seq., 1201 et seq., 1351 et seq.)

probably ineligible for continued benefits or entitled only to reduced payments may controvert the county's decision to withhold future benefits. (Public Social Services Manual, Reg. 44-325.43.)

Under this regulation the recipient is entitled to appear before his caseworker or other responsible person employed by the county department to learn the nature and extent of the information upon which his aid has been withheld and to make any explanation or provide any intelligence he may desire. The hearing is held prior to the date the payment is due and if the department does not alter its decision to withhold benefits the recipient is immediately deprived of further payments. He may request a fair hearing—a term of art provided in section 10950 et seq. of the Welfare and Institutions Code—but such a hearing does not occur until after benefits have been discontinued or reduced.[2] Judicial review is available from a determination made upon a fair hearing. (Welf. & Inst. Code, § 10962.)

The primary question at issue in this proceeding for a writ of mandate and declaratory relief is whether the hearing provided by the regulation— the only hearing afforded prior to the withholding of benefits—meets the requirement of the United States Constitution and the California Constitution that a person may not be deprived of life, liberty or property without due process of law. (U.S. Const., Amend. XIV; Cal. Const., art. 1, § 13.)

Regulation 44-325.43 of the Public Social Services Manual issued by the State Department of Social Welfare provides:

"The recipient, the parent or other person responsible for the child in *AFDC,* shall be notified, in writing, immediately upon the initial decision being made to withhold a warrant beyond its usual delivery date for any reason other than death, and in no case less than three (3) mail delivery days prior to the usual delivery date of the warrant to the recipient. The county shall give such notice as it has reason to believe will be effective including, if necessary, a home call by appropriate personnel. Form ABCD 239, Notice of Action, or a substitute form, may be used for this purpose. Every notification shall include:

.431   A statement setting forth the proposed action and the grounds

---

[2]Section 10950 of the Welfare and Institutions Code provides that if a recipient of public social services, as therein defined, is dissatisfied with any action of the county he shall, upon filing a request with the State Department of Social Welfare, be accorded an opportunity for a fair hearing. The sections which follow set forth the procedure to be observed in the conduct of such hearings. There is no claim that the fair hearing procedure violates any constitutional guarantees.

therefor, together with what information, if any, is needed or action required to reestablish eligibility or to determine a correct grant.

.432 Assurance that prompt investigation is being made; that the withheld warrant will be delivered as soon as there is eligibility to receive it; and that the evidence or other information which brought about the withholding action will be freely discussed with the recipient, parent, or other person, if he so desires (see Section .434 below).

.433 A statement of whether, if aid is withheld, the recipient will or will not continue to be certified for medical assistance during the month aid is withheld.

.434 A statment that the recipient, parent, or other person may have the opportunity to meet with his caseworker, an eligibility worker, or another responsible person in the county department, at a specified time, or during a given time period which shall not exceed three (3) working days, and the last day of which shall be at least one (1) day prior to the usual delivery date of the warrant, and at a place specifically designated in order to enable the recipient, parent, or other person:

(a) To learn the nature and extent of the information on which the withholding action is based;

(b) To provide any explanation or information, including, but not limited to that described in the notification pursuant to Section .431 above;

(c) To discuss the entire matter informally for purposes of clarification and, where possible, resolution."

Plaintiffs contend that the hearing provided by this regulation does not afford them due process in that it fails to require adequate notice or an opportunity to test the credibility and probative value of the evidence and that it does not assure an impartial trier of fact, a decision based upon the evidence produced at the hearing, or a result based upon the merits. We conclude that these contentions are generally meritorious under the holdings of two decisions of the United States Supreme Court which were issued after the present case was filed but prior to oral argument before us. (*Goldberg* v. *Kelly*, 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]; *Wheeler* v. *Montgomery*, 397 U.S. 280 [25 L.Ed.2d 307, 90 S.Ct. 1026].)

Plaintiffs are Mary McCullough, her minor children, and all persons receiving Aid to Families with Dependant Children (hereinafter called AFDC). Defendants are the Director of the Alameda County Welfare Department and the Director of the California Department of Social Welfare. Plaintiffs allege as follows: Prior to March 1, 1968, Mrs. McCullough had

established her eligibility to receive aid under the AFDC program. On March 26, she received a notice from the Alameda County Welfare Department stating that the April 1 and April 16 payments were being withheld for "Clarification of current living arrangement due to F.S.D. report of man in the home since June, 1967." Mrs. McCullough and her children had insufficient funds to sustain them without these payments. They were not afforded an opportunity to contest the county's action at a hearing which comported with the requirements of due process. Their only remedy in the ordinary course of law was to request a fair hearing, and a decision upon such a hearing might not be reached for 190 days, plus possible additional time in the event of rehearings.

The petition contained appropriate allegations for a class action on behalf of all families receiving benefits under the AFDC program. The prayer demanded restoration of payments to the individual plaintiffs and a declaration of the rights of the parties.

The trial court issued an alternative writ of mandate and heard the case on the basis of a stipulated statement of facts. It was stipulated that the instant proceeding affected not only families receiving benefits under AFDC, but also those receiving aid to the blind, the needy disabled, and old age security, i.e., those covered by the categorical assistance programs. (See fn. 1.)

The court found in favor of plaintiffs. It determined that the regulation is invalid in that it does not provide a pretermination hearing with adequate procedural safeguards, including a decision based solely on the evidence produced at the hearing and one rendered by an impartial person not previously connected with the case.

As to the individual plaintiffs, the court ordered that their aid be resumed retroactive to April 1, 1968, and that defendants provide them with a fair hearing within 30 days. However, the continuation of aid payments could be made conditional upon their filing an "affirmation of eligibility form." A different order was made regarding the other plaintiffs. Payments to them were to be continued (or restored if previously withheld) until a determination of their eligibility was rendered in a fair hearing pursuant to section 10950 of the Welfare and Institutions Code "or the equivalent thereof," provided that such persons requested the hearing and filed a sworn statement controverting the allegations of ineligibility, including a statement of all current income and resources.

After the trial court rendered its judgment a fair hearing was held as to the eligibility of Mrs. McCullough and her children and it was determined that the county had erroneously deprived them of benefits. The issues as

to these plaintiffs are now moot,[3] but, as all parties concede, we still must determine whether aid may be withheld from the other plaintiffs involved in this proceeding on the basis of the hearing provided by regulation 44-325.43.

In *Goldberg* v. *Kelly, supra,* 397 U.S. 254, the United States Supreme Court considered whether recipients of public assistance were deprived of due process because their benefits were withheld after a pretermination hearing set forth in a New York regulation. Under this regulation, if a caseworker had doubts about a recipient's continued eligibility he would first discuss the matter with the recipient. If he concluded that aid should be withheld or discontinued, he would recommend such action to his supervisor. Should the supervisor concur, he would send the recipient a letter stating the reasons for proposing to terminate aid and notifying him that within seven days he could request that a higher official review the the record. The recipient was entitled to support the request with a written statement. Aid was discontinued immediately if the reviewing official affirmed the determination of ineligibility. The decision was communicated to the recipient in a letter stating the reasons for the action and informing him that a post-termination fair hearing was available. The fair hearing (comparable to that provided by section 10950 et seq. of our Welfare and Institutions Code) permitted a recipient to appear personally, offer oral evidence and confront and cross-examine witnesses. If the recipient prevailed at the fair hearing he was paid all funds erroneously withheld.[4] Judicial review was available if aid was not restored.

The Supreme Court held that welfare recipients must be accorded procedural due process prior to the termination of benefits and that the consideration of what procedures due process may require depends upon the precise nature of the governmental function involved as well as the private interest affected by the governmental action. Termination of aid to an eligible recipient deprives him of the very means for his survival and his

---

[3]It may be noted that the proceeding is moot for an additional reason insofar as Mrs. McCullough and her children are concerned. AFDC benefits were withheld because of a report that Mrs. McCullough was living with a man. Under section 11351 of the Welfare and Institutions Code, as it read at the time involved here, if an adult male person assuming the role of spouse lived with the mother, AFDC benefits were to be computed after consideration was given to his income. In *Lewis* v. *Martin,* 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282], recently decided by the United States Supreme Court, it was held that this regulation was invalid because it violates the Social Security Act and the decision in *King* v. *Smith* (1968) 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128].

[4]The payment of benefits retroactive to the time they were erroneously discontinued applies under federal regulations to all categorical assistance programs. (HEW Handbook of Public Assistance Administration, § 6200, subd. (k).)

situation becomes immediately desperate. █ The same governmental interests which counsel that welfare benefits be provided also require its uninterrupted provision to those eligible to receive aid. Pretermination evidentiary hearings are indispensable to the achievement of these goals.

The opinion states that while it is true some increased costs are involved to a state in providing pretermination hearings and any benefits paid to ineligible recipients pending decision probably cannot be recouped, the state may reduce these financial burdens by developing procedures for prompt pretermination hearings and by skillful use of personnel and facilities. Thus, the interest of the eligible recipient and the state in assuring uninterrupted assistance outweighs the state's competing concern to prevent any increase in its fiscal and administrative burdens.

The high court was clear, however, that the hearing afforded prior to termination need not take the form of a judicial or quasi-judicial trial. Since a fair hearing is ultimately provided, the pretermination hearing serves only the function of producing an initial determination of the validity of the department's grounds for discontinuing payments. █ A complete record and comprehensive opinion, which would serve primarily to facilitate judicial review and guide future decisions, need not be provided at the pretermination stage. Relatively speedy solutions to eligibility problems are desirable and only minimal procedural safeguards are required.

█ Such safeguards include timely and adequate notice, the right to appear personally before the official who will make the decision, and to present evidence and confront and cross-examine witnesses. The recipient must be permitted to retain an attorney, and the decision must rest solely on the legal rules and evidence adduced at the hearing. The decision maker must be an impartial official, and he must state the reasons for his determination and indicate the evidence he relied upon, although his statement need not amount to a full opinion or formal findings of fact and conclusions of law.

The court decided *Wheeler* v. *Montgomery, supra,* 397 U.S. 280, on the same day it rendered the *Goldberg* decision. *Wheeler* involved the regulation at issue here. In a short opinion the court held the regulation invalid in that it did not afford the recipient an evidentiary hearing at which he could personally appear to offer oral evidence and confront and cross-examine the witnesses against him.

We turn, then, to plaintiffs' allegations in the light of these decisions. Their first contention is that the three-day notice set forth in the regulation

is inadequate in that it does not permit sufficient time to prepare for a hearing. The notice states the proposed action and the grounds therefor. Three days is too short a time, it is asserted, to gather evidence, secure legal counsel, discover and evaluate the legal and factual grounds for termination, arrange for the hearing, interview witnesses, and secure relevant documentary evidence. Defendants concede, as they must, that the three-day notice provision is inadequate in the light of the *Goldberg* decision.

An opportunity to present evidence and to confront and cross-examine witnesses is, of course, required by the holdings in *Wheeler* and *Goldberg.* The latter decision also makes it clear that the decision maker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence produced at the hearing.[5]

Another ground of invalidity posited by plaintiffs is that the regulation fails to provide an impartial trier of fact. In *Goldberg* the Supreme Court held that while it agreed with the decision of the lower federal court in the same case that "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker," he should not have "participated in making the determination under review." (397 U.S. at p. 271 [25 L.Ed.2d at p. 301].)

The California regulation does not specify who shall make the determination to withhold benefits. Presumably, the caseworker, with the participation at some stages of his supervisor, may initiate the investigation, participate therein, make the initial decision to discontinue payments, conduct the hearing, and decide ultimately that benefits are to be discontinued. Such a procedure clearly violates the Supreme Court's mandate that a welfare official who "participated in making the termination under review" should not act as the decision maker. Defendants so concede. They state, however, that appeal units in each county welfare department could supply the necessary impartiality. Plaintiffs claim, on the other hand, that in the less populous counties of the state it will be impossible to find a person in the welfare department who can assume the role of an impartial decision maker. On the basis of the record in this case, we are

---

[5]Plaintiffs make the somewhat puzzling claim that the California regulation is deficient in that it fails to require a binding decision on the merits. They cite in support of this argument a regulation of the Department of Social Welfare to the effect that a county may withhold benefits upon the receipt of evidence which is substantial in nature and reliable in source indicating probable ineligibility. If this regulation permits the withholding of payments for reasons not brought out at the hearing, our conclusion here, consonant with the requirements of *Goldberg,* that the decision must rest solely on the legal rules and evidence adduced at the hearing, should lay such a possibility to rest.

unable to consider plaintiffs' empirically unsupported apprehension. In the event it appears in the future that a county fails to meet the standards set forth in *Goldberg*, the matter can be determined in other proceedings.

A correlative contention of plaintiffs is that the regulation is defective because it fails to specify that the recipient may present his case to the person responsible for rendering the ultimate decision. It provides that the hearing is to be held before an "eligibility worker, or another responsible worker in the department," but is silent as to whether this official also makes the decision.

The New York regulation involved in *Goldberg* did not offer a recipient the opportunity to make any oral presentation whatever. Nevertheless, the observations of the court in *Goldberg* with regard to this aspect of the problem are instructive. The court held the New York procedure to be improper because the recipient could not present his case directly to the official who makes the decision and because it did not give the recipient the opportunity to "mold his argument to the issues the decision maker appears to regard as important." Moreover, stated the court, the "second-hand presentation to the decision maker by the caseworker has its own deficiencies; since the caseworker usually gathers the facts upon which the charge of ineligibility rests, the presentation of the recipient's side of the controversy cannot safely be left to him." (397 U.S. at p. 269 [25 L.Ed.2d at p. 300].)

■ The California regulation fails to provide that the recipient may present his case orally to the decision maker, and it permits the person who holds the hearing to transmit the substance of the proceeding to the person who decides if, indeed, these functions are actually distinct. It seems evident, under the rationale of *Goldberg*, that the regulation is invalid in failing to provide that the recipient may present his case before the person who will make the decision regarding his eligibility for future benefits.

Another requirement of due process, according to *Goldberg*, is that the recipient must be allowed to retain an attorney if he so desires. Although our regulation is silent on this point, the parties here appear to agree that in practice counsel may be retained to represent recipients.

■ Plaintiffs urge that the regulation is defective because it does not provide that witnesses may be subpoenaed or that they must testify under oath. It is claimed that these requirements are included in the right to cross-examine and are essential for a meaningful decision. No statute has been cited giving persons employed by county welfare departments the power to issue subpoenas and administer oaths, and we are of the view

that such formalities are not required at the pretermination stage. *Goldberg* makes it clear that informal procedures will suffice at such a hearing because the subsequent fair hearing will provide the recipient with a full administrative review (397 U.S. 254 [25 L.Ed.2d 287].)

Finally, plaintiffs assert that under California law the pretermination hearing which is afforded to welfare recipients must provide more safeguards than those necessary for due process. They rely principally on *Ratliff* v. *Lampton* (1948) 32 Cal.2d 226 [195 P.2d 792, 10 A.L.R.2d 826]. It was there held that although no specific provision for a hearing was made in the statutes which permitted the Director of Motor Vehicles to revoke a license, the requirement for a hearing prior to revocation would be implied, absent legislative intent to the contrary, from a provision which permitted the director to suspend a license for good cause. Plaintiffs point out that the Welfare and Institutions Code contains provisions that welfare benefits may be withheld only for cause. (See, e.g., Welf. & Inst. Code, §§ 11458, 12200.)

*Ratliff* is authority for the proposition that a hearing may be required under some circumstances prior to termination, but the decision does not specify the character of the hearing. The opinion states that a hearing must afford the licensee an opportunity to present evidence under the rule in *Carroll* v. *California Horse Racing Bd.* (1940) 16 Cal.2d 164 [105 P.2d 110] and *Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716 [160 P.2d 816]. *Carroll* holds only that notice and hearing are required under a statute providing that a license should not be revoked without just cause. In *Steen* the ruling is the same, but the court added that the administrative agency does not have unlimited discretion as to the nature of the hearing provided and that a hearing is "required with all that the term implies." (26 Cal.2d at p. 725.) These cases do not stand for the proposition that the hearing afforded to plaintiffs prior to the termination or reduction of their payments must provide safeguards additional to those required for basic due process, and we have found no authority so holding.

█ As we have seen, the trial court held regulation 44-325.43 invalid and ordered defendants to continue aid payments pending a fair hearing and upon condition that a sworn statement be filed by recipients controverting the allegations of ineligibility.[6] We agree that the regulation is

---

[6]It should be noted that the Department of Health, Education and Welfare has adopted regulations, to become effective on July 1, 1970, requiring that aid under the categorical assistance programs must be continued until after a fair hearing has been concluded. (See 34 Fed. Reg. 1144 (1969); 34 Fed. Reg. 13595 (1969) 45 C.F.R. 205.10.)

invalid but since we have concluded that a full administrative hearing is not required prior to the initial termination of aid, the judgment must be reversed insofar as it holds that benefits are to be continued pending a fair hearing and that a sworn statement is required as a condition of obtaining such a hearing. The cause is remanded with directions to the trial court to enter a judgment in accordance with the views expressed herein, respondents to recover costs on appeal.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.