[Civ. No. 40338. Second Dist., Div. Three. July 9, 1974.]

HENRY VALENZUELA, Plaintiff and Appellant, v.
BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF
LOS ANGELES, Defendant and Respondent.

558

## Counsel

Aaronson, Gruber & Meissner and Patrick O. Meissner for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, John A. Daly, Executive Assistant City Attorney, Jack L. Wells, Assistant City Attorney, and William Lorenzetti, Deputy City Attorney, for Defendant and Respondent.

## Opinion

**FORD, P. J.** — In this proceeding petitioner and appellant Valenzuela sought a peremptory writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure to compel respondent Board of Civil Service Commissioners (hereinafter designated as "the board") to vacate its decision that petitioner was not coerced to resign, and did not resign under duress, his position as an employee of the Department of Water and Power of the City of Los Angeles, and to compel the board to reinstate him as an employee. Judgment denying a peremptory writ of mandate was entered and petitioner has appealed therefrom.

The findings of fact in the superior court were in part as follows: 1. Prior to September 15, 1970, petitioner Valenzuela was regularly employed as a maintenance laborer with the Department of Water and Power; that position was in the classified civil service of the City of Los Angeles. 2. On September 14, 1970, petitioner executed a written resignation from his position. 3. On September 17, 1970, petitioner filed a statement of denial of resignation with the board, alleging that he had been compelled to resign under duress by the Department of Water and Power. 4. Pursuant to authority granted to it under section 114 of the city charter,[1] the board conducted "three hearings into petitioner's appeal from his alleged forced resignation—January 22, 1971; March 19, 1971, and May 7, 1971." 5. The hearings were "public quasi-judicial hearings at which witnesses were called to testify by petitioner and aforesaid Department of Water and Power, evidence was received, exhibits were introduced into evidence and arguments made by the petitioner and the Department." 6. "At its

---

[1]Section 114 of the city charter is in pertinent part as follows: "The board shall investigate the enforcement of this article [article IX] and its rules, and the conduct and action of the appointees in the classified civil service in this city."

meeting of July 30, 1971, the board voted three to two to find that petitioner herein was not coerced to and did not resign under duress."

One of the conclusions of law of the superior court was: "That the decision of respondent board of July 30, 1971, in finding that petitioner was not coerced into and did not resign under duress from his position as Maintenance Laborer with the Department of Water and Power of the City of Los Angeles is supported by substantial evidence in the light of the record."

Traditionally, in a case such as this involving the decision of a local administrative agency, the function of the trial court has been to review the evidence adduced before the agency to determine whether there was substantial evidence to support the agency's findings in light of the whole record. (See *Keithley* v. *Civil Service Bd.,* 11 Cal.App.3d 443, 448 [89 Cal.Rptr. 809].) ▪▪▪ However, while this case was pending on appeal the Supreme Court decided the case of *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]. Therein the court held that when an adjudicatory order or decision of an administrative agency of legislative or local origin "substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence." (11 Cal.3d at p. 32.)

The Board of Civil Service Commissioners of the City of Los Angeles is a local administrative agency and thus the question presented on this appeal is whether the board's decision that petitioner was not coerced to resign and did not resign under duress his position as a maintenance laborer with the Department of Water and Power of the City of Los Angeles is a decision substantially affecting a fundamental vested right of petitioner. If such a right was substantially affected by the board's decision, it must be held that the trial court erred in applying the substantial evidence rule in reviewing the evidence presented to the board.

In *Moreno* v. *Cairns,* 20 Cal.2d 531, at pages 534-535 [127 P.2d 914], the Supreme Court stated: "Such resignations [resignations made under duress] are akin to lay offs, suspensions, or discharges by virtue of the element of coercion and bear only a formal resemblance to voluntary resignations. Whenever a person is severed from his employment by coercion the severance is effected not by his own will but by the will of a superior. A person who is forced to resign is thus in the position of one who is

discharged, not of one who exercises his own will to surrender his employment voluntarily." Thus the board's decision in this matter substantially affected petitioner's position as a permanent employee in the classified civil service of the City of Los Angeles. The question remains whether such employment constitutes a fundamental vested right within the meaning of *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28.

In *Strumsky* the court reiterated the definition of the term "fundamental vested right" laid down in *Bixby* v. *Pierno,* 4 Cal.3d 130 [93 Cal. Rptr. 234, 481 P.2d 242], wherein the court stated at page 144 (fn. omitted herein): "The courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review. (*Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33]; *Beverly Hills Fed S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 316 [66 Cal.Rptr. 183].) As we shall explain, the courts in this case-by-case analysis consider the nature of the right of the individual: whether it is a fundamental and basic one, which will suffer substantial interference by the action of the administrative agency, and, if it is such a fundamental right, whether it is possessed by, and vested in, the individual or merely sought by him. In the latter case, since the administrative agency must engage in the delicate task of determining whether the individual qualifies for the sought right, the courts have deferred to the administrative expertise of the agency. If, however, the right has been acquired by the individual, and if the right is fundamental, the courts have held the loss of it is sufficiently vital to the individual to compel a full and independent review. The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction. [¶] In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation. This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or profession—a right which induced this court's statement in 1939: 'it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts. . . .' (*Drummey* v. *State Bd. of Funeral Directors, supra,* 13 Cal.2d 75, 85 [87 P.2d 848].) As Professor Jaffe, a leading authority in the field of administrative law, has written: 'The California rule can be justified in so far as it gives additional procedural protection to an interest of great importance as where a professional license has been revoked. The

protection may be the more needed to overcome likely prejudices of a professional licensing body against mavericks and unconventional practitioners.' Jaffe, Judicial Control of Administrative Action, *supra*, pp. 191-192 (fn. omitted)."

In *Strumsky* the Supreme Court had before it for review a decision of the Board of Retirement of the San Diego County Employees Retirement Association denying the widow of a former employee a service-connected death allowance as established by section 31787 of the Government Code. In deciding that the widow's right to receive a service-connected death allowance was a fundamental vested right, the Supreme Court stated (11 Cal.3d at p. 45): "It has long been established that retirement benefit rights of the nature here involved are vested. [Citations.] We also believe that the right here in question is not only vested but 'fundamental' within the meaning of *Bixby* v. *Pierno, supra.* 'In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.' (4 Cal.3d at p. 144.) It is the latter consideration which renders the instant right fundamental. Above and beyond the 'economic aspect' present in all pension cases, we have here a situation in which the benefits sought might well mean to the officer's widow the difference between self-support and the necessity that she supplement pension income through employment or other means. [Fn. omitted.] Thus, the impact in human terms of the decision is manifest."

We turn then to the application of the distinction between vested and nonvested rights in the context of the case presently before this court. Respondent takes the position that public employment is not a fundamental vested right, citing those cases which reiterate the rule that one does not have a constitutional right to public employment. (*Bagley* v. *Washington Township Hospital Dist.*, 65 Cal.2d 499, 503 [55 Cal.Rptr. 401, 421 P.2d 409]; *Fort* v. *Civil Service Commission*, 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385]; *Board of Education* v. *Swan*, 41 Cal.2d 546, 556 [261 P.2d 261] [disapproved in *Bekiaris* v. *Board of Education*, 6 Cal.3d 575, 587-588, fn. 7 (100 Cal.Rptr. 16, 493 P.2d 480)].) However, as was said by the United States Supreme Court in *Slochower* v. *Board of Education*, 350 U.S. 551, at page 555 [100 L.Ed. 692, at page 699, 76 S.Ct. 637], "[t]o state that a person does not have a constitutional right to government employment is only to say that he must comply with reasonable, lawful and nondiscriminatory terms laid down by the proper authorities."

The statement that an individual has no constitutional right to public employment is based on the theory that government employment is a privilege rather than a right. However, the right-privilege distinction has been largely undermined by more recent decisions. (See *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 503-504.) Thus in *Patton* v. *Board of Harbor Commissioners,* 13 Cal.App.3d 536, at pages 540-541 [91 Cal.Rptr. 832], it is said: "It has traditionally been held that no one has a vested right in public employment except insofar as conferred by statute or valid regulation (*Butterworth* v. *Boyd,* 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838]), and that since possession of a public office does not confer a vested property right, removal or suspension will not involve the question of due process. (*Ludolph* v. *Board of Police Commrs.,* 30 Cal.App.2d 211, 216 [86 P.2d 118].) However, in recent years, the importance attached to the distinction between a 'right' on the one hand and a 'privilege' or 'benefit' on the other, in determining that constitutional protections are afforded, has greatly diminished. For example, although employment is a publicly conferred 'benefit' as opposed to a 'right,' the government cannot now arbitrarily deprive the employee of constitutional rights as a condition of employment. The following cases involve First Amendment rights: [fn. omitted] *Pickering* v. *Board of Education* (1968) 391 U.S. 563 [20 L.Ed.2d 811, 88 S.Ct. 1731]; *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409]; *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331 [38 Cal.Rptr. 625, 392 P.2d 385]; *Goldberg* v. *Regents of the University of California* (1967) 248 Cal.App.2d 867 [57 Cal.Rptr. 463]; *Belshaw* v. *City of Berkeley* (1966) 246 Cal.App.2d 493 [54 Cal.Rptr. 727]; *Board of Trustees* v. *Owens* (1962) 206 Cal.App.2d 147 [23 Cal.Rptr. 710]. 'The test is whether conditions annexed to the benefit reasonably tend to further the purposes sought by the conferment of that benefit and whether the utility of imposing the conditions manifestly outweighs any resulting impairment of constitutional rights.' (*Goldberg* v. *Regents of the University of California, supra,* at p. 877.) [¶] Protection has also been extended to the right of procedural due process owned by those upon whom the government has conferred certain important benefits. Plaintiff cites numerous cases requiring notice and hearing: *Dixon* v. *Alabama State Board of Education* (5th Cir. 1961) 294 F.2d 150, *R. R.* v. *Board of Education of Shore Reg. H. S. Dist.* (1970) 109 N.J.Super. 337 [263 A.2d 180], *Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees* (1970) 9 Cal.App.3d 873 [88 Cal.Rptr. 563] and *Goldberg* v. *Regents of the University of California* (1967) *supra,* 248 Cal.App. 2d 867. All uphold the right of a student to notice and hearing before he

can be expelled or suspended from a public educational institution. See also *Wheeler* v. *Montgomery* (1970) 397 U.S. 280 [25 L.Ed.2d 307, 90 S.Ct. 1026], *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011] and *McCullough* v. *Terzian* (1970) 2 Cal.3d 647 [87 Cal. Rptr. 195, 470 P.2d 4], which involve the rights of welfare recipients to notice and hearing before the termination of welfare benefits." And in *Graham* v. *Richardson*, 403 U.S. 365, 374 [29 L.Ed.2d 534, 543, 91 S.Ct. 1848], a case involving the validity of state statutes denying welfare benefits to resident aliens, the Supreme Court stated: "But this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' "

Section 112(a) of the Charter of the City of Los Angeles provides in pertinent part as follows: "Any board or officer having the power of appointment of . . . employees in any department of the government of the city shall have the power to remove, discharge or suspend any . . . employee of such department; but no person in the classified civil service of the city . . . shall be removed, discharged or suspended except for cause. . . ." The Supreme Court interpreted this charter provision in *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716 [160 P.2d 816], stating at pages 722-723: "In interpreting that section it should be kept in mind that 'The purpose of civil service is twofold—to abolish the so-called spoils system, and to increase the efficiency of the service by assuring the employees of continuance in office regardless of what party may then be in power. Efficiency is secured by the knowledge on the part of the employee that promotion to higher positions when vacancies occur will be the reward of faithful and honest service' (*Allen* v. *McKinley*, 18 Cal.2d 697, 705 [117 P.2d 342]), and that in ascertaining legislative intent the purpose sought to be achieved by a statute is a significant factor in its interpretation. (*People* v. *Moroney*, 24 Cal.2d 638 [150 P.2d 888]; *Gage* v. *Jordan*, 23 Cal.2d 794 [147 P.2d 387]; *City & County of San Francisco* v. *San Mateo County*, 17 Cal.2d 814 [112 P.2d 595]; *California Drive-in Restaurant Assn.* v. *Clark*, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028].) Thus, in the instant case the goal of civil service, assurance of continuity in the position, should not be thwarted by leaving the employee without remedy for a full consideration of the propriety of his discharge, unless the statute unquestionably requires such a result. [¶] The rule is firmly established that if by statute an officer or civil service employee may not be removed or discharged except for cause, the clear implication is that there be afforded an opportunity for a full hearing to accomplish his removal; that unless the statute expressly negatives the necessity of a hearing, common fairness and justice compel the inclusion of such a

requirement by implication. (See *Bannerman* v. *Boyle*, 160 Cal. 197 [116 P. 732]; *Carroll* v. *California Horse Racing Board*, 16 Cal.2d 164 [105 P.2d 110]; *Welch* v. *Ware*, 161 Cal. 641 [119 P. 1080]; *Knights of Ku Klux Klan* v. *Francis*, 79 Cal.App. 383 [249 P. 539]; *People* v. *Bailey*, 30 Cal.App. 581 [158 P. 1036]; *Scott* v. *Donahue*, 93 Cal.App. 126 [269 P. 455]; *Abrams* v. *Daugherty*, 60 Cal.App. 297 [212 P. 942]; *Boyd* v. *Pendegast*, 57 Cal.App. 504 [207 P. 713]; 99 A.L.R. 336.) Thus it is clear that the charter, by prohibiting removal except for cause, impliedly requires a hearing."

Hence permanent employment within the classified civil service of the City of Los Angeles is vested in the sense that one may not be removed from that employment except for cause and after notice and a hearing, just as one's professional license may not be revoked or suspended except for cause and after notice and a hearing. Thus petitioner had a legally cognizable right of which he could not be deprived except for cause and after notice and a hearing. Such right is "fundamental," not only with respect to "the economic aspect of it" but also with respect to "the effect of it in human terms and the importance of it to the individual in the life situation." (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144.) A person in petitioner's position is not merely subject to the loss of his job, a job which he might duplicate in private industry, but he is subject to the loss of a permanent civil service position. Many persons forego the lure of a more lucrative private position for the benefits and security of a civil service career. The breadth of protection afforded a permanent civil service employee is of undeniable importance to the individual, not only economically but also "in the life situation." Thus it was decided in *Rigsby* v. *Civil Service Com.* (1974) 39 Cal.App.3d 696 [115 Cal.Rptr. 490], a case involving the discharge of a permanent civil service employee of the Los Angeles County Sheriff's Department, that the petitioner's employment constituted a vested fundamental right within the meaning of *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28. Under *Strumsky*, in determining whether in such a case there has been an abuse of discretion because the findings are not supported by the evidence, the superior court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. In the case presently before this court the superior court, following the law as expressed prior to *Strumsky*, found that the decision of the board was "supported by substantial evidence in the light of the record." The superior court having failed to exercise its independent judgment on the evidence and having failed to determine whether or not

the board's findings were supported by the weight of the evidence, the judgment herein must be reversed.

The judgment is reversed and the case is remanded to the superior court with directions to vacate the findings of fact heretofore made and thereupon to proceed in accordance with the law as set forth in the opinion herein.

Cobey, J., and Allport, J., concurred.