[Civ. No. 17169. Third Dist. Mar. 14, 1979.]

PATRICK L. WRIGHT, a Minor, etc., Plaintiff and Appellant, v.
DEPARTMENT OF BENEFIT PAYMENTS,
Defendant and Respondent.

## COUNSEL

Friedman, Collard, Poswall & Thompson and John W. Poswall for Plaintiff and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, John J. Klee, Jr., Assistant Attorney General, Thomas E. Warriner, Richard M. Skinner and Floyd D. Shimomura, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**PUGLIA, P. J.**—This is an appeal from a judgment on the pleadings in favor of the State of California, Department of Benefit Payments (department).[1] Plaintiff, as guardian ad litem for her minor son, Patrick, brought this action for declaratory relief in an attempt to bar the department from recouping out of Patrick's $20,000 personal injury settlement, the sum of $4,746.91 which the department had paid to Medi-Cal providers for treatment of injuries sustained by Patrick in an accident which resulted in the settlement.

In the posture of this case, we must accept as true the allegations in plaintiff's complaint for declaratory relief. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 714, fn. 3 [117 Cal.Rptr. 241, 527 P.2d 865].) The following statement of facts has been taken from the complaint and its incorporated exhibits.

On a dark, rainy night in 1973, when Patrick was six years old, he crossed a street into the path of a pickup truck driven by Wayne Allen Garcia and was struck by the vehicle. Patrick was not in a crosswalk; had the street been marked with crosswalks, the nearest one would have been some 45 feet away. Garcia was not speeding and was able to stop his truck without skidding within a few feet of the impact. Patrick incurred brain damage with residual effects; his medical treatment cost approximately $6,500, all of which was paid for by Medi-Cal.

Plaintiff sued Garcia on Patrick's behalf. The department filed a notice of lien in that action for recovery of its Medi-Cal expenditures. (See Welf.

---

[1]The duties of the Department of Benefit Payments in the Medi-Cal program recovery area since July 1, 1978, have been the responsibility of the state Department of Health Services (Welf. & Inst. Code, §§ 10722, 14061, 14062, 14064, 14065, added by Stats. 1977, ch. 1252, operative July 1, 1978). Accordingly, the state Department of Health Services rather than the Department of Benefit Payments is now the proper party defendant. Throughout this opinion therefore references to the defendant, the department or the director refer to the state Department of Health Services and its director.

& Inst. Code, §§ 14124.74, 14124.78.)[2] Because there was a serious question of liability, the action was settled for the sum of $20,000.

██ Plaintiff has refused to repay the department the amount of its lien. She contends on appeal as she did at trial that procedural due process requires the department to hold a hearing before satisfying its lien from the settlement proceeds to determine whether satisfaction of the lien would "result in undue hardship upon [Patrick]" within the meaning of Welfare and Institutions Code section 14124.71.[3] ██ Plaintiff also contends that since Patrick's settlement represented only 20 percent of the dollar value of his injuries, comparative negligence principles require that the department's reimbursement, if allowed at all, must similarly be reduced in proportion to the percentage of fault for the accident attributable to Patrick.

## I.

██ Section 14124.71 (fn. 3, *ante,* p. 449) confers upon the director discretion in certain circumstances to waive any part or all of a lien claim against a Medi-Cal recipient who is reimbursed by the tortfeasor. Exercise of the director's discretion is not expressly conditioned upon a hearing. (See §§ 14124.70-14124.79.) Relying on *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], and *McCullough* v. *Terzian* (1970) 2 Cal.3d 647 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266], plaintiff argues that in seeking summary recovery on its lien, the department threatens to deprive Patrick of a welfare-type benefit in which he has a property interest without affording him a hearing to determine whether so doing would impose "undue hardship" upon him.

In *Goldberg* v. *Kelly, supra,* the United States Supreme Court held that the state could not terminate AFDC benefits to a recipient whose eligibility had become suspect without first affording him a hearing upon

[2]The department's lien claim was for $6,494.21. After deducting the department's proportionate share of costs and attorney fees (Welf. & Inst. Code, § 14124.72, subd. (d)), the lien was reduced to $4,746.91.

[3]All statutory references hereafter are to the Welfare and Institutions Code unless otherwise specified.

Section 14124.71, subdivision (b)(2), provides that the director may waive the lien claim "in whole or in part, for the convenience of the director, or if the director determines that collection would result in undue hardship upon the person who suffered the injury, . . ." The "undue hardship" provision was carried over into section 14124.71 without material change from former section 14117 (repealed Stats. 1976, ch. 621, § 1, p. 1474).

the allegations of ineligibility. The court noted that "welfare benefits . . . are a matter of statutory entitlement for persons qualified to receive them." (Fn. omitted; 397 U.S. at pp. 261-262 [25 L.Ed.2d at p. 295].) In reaching the conclusion that a pretermination hearing must be afforded, the court reasoned: "Thus the crucial factor in this context—a factor not present in the case of the black-listed government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. . . . [Par.] [T]he same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination evidentiary hearings are indispensable to that end." (Italics in original; *Goldberg* v. *Kelly, supra,* 397 U.S. at pp. 264-265 [25 L.Ed.2d at p. 297].) *McCullough* v. *Terzian, supra,* 2 Cal.3d 647, invalidated a county regulation governing termination of aid to AFDC recipients, because the regulation failed to meet the standards set forth in *Goldberg* v. *Kelly.* And in *Fuentes* v. *Shevin, supra,* 407 U.S. 67 [32 L.Ed.2d 556], state prejudgment replevin procedures permitting the taking of chattels from their possessor without affording him a prior hearing to challenge their taking, were found constitutionally infirm.

■ " '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' " (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 263 [25 L.Ed.2d at p. 296], quoting from *Cafeteria & Restaurant Workers Union* v. *McElroy,* 367 U.S. 886, 895 [6 L.Ed.2d 1230, 1236, 81 S.Ct. 1743].)

■ In her reliance on *Goldberg, McCullough,* and *Fuentes,* plaintiff overlooks several critical distinctions between Patrick's situation and the circumstances of the plaintiffs in those cases. Unlike the *Goldberg* plaintiff, Patrick cannot contend that satisfaction of the department's lien will deprive him of his means of subsistence; to the contrary, Patrick's eligibility for welfare benefits is not affected thereby. *McCullough* is also inapposite, for it too dealt with termination of AFDC benefits to recipients whose eligibility had become questionable. An additional point of distinction is that unlike the *Goldberg* and *McCullough* plaintiffs, Patrick has already received the welfare-type benefits to which he was statutorily entitled; Medi-Cal provided him medical services at a time when he was unable to pay for them.

Patrick's situation is fundamentally unlike that of the plaintiffs in *Fuentes* v. *Shevin, supra,* 407 U.S. 67 [32 L.Ed.2d 556]. The statute in *Fuentes* allowed the state to authorize its agents to seize property in the possession of a person upon the ex parte application of another without opportunity to be heard. However, the sum the department seeks to recoup herein is by virtue of sections 14124.71, subdivision (a)[4] and 14124.74, subdivision (a),[5] property to which the department became entitled when it provided Medi-Cal benefits to Patrick for treatment of his injuries. The statute provides for a lien and the procedure by which the department may enforce that lien. Traditional notions of due process and fundamental fairness are not offended by a statutory scheme which permits the public treasury to be reimbursed from Patrick's recovery from the party who caused the injuries for which Medi-Cal paid for the treatment. Having received those services, Patrick's interest in their dollar equivalent is not such that the department's right to recover the amount thereof is qualified by Patrick's right to a hearing.

Section 14124.71, subdivision (b)(2) (fn. 3, *ante,* p. 449) allows the department some discretion in compromising, settling, releasing or waiving recovery for benefits paid. That grant of discretion is not equivalent to the statutorily created property rights involved in *Goldberg* v. *Kelly, supra,* and *McCullough* v. *Terzian, supra.* Should the department exercise its discretion in a discriminatory or arbitrary manner, there are remedies available. We know of no principle of law, however, which requires that Patrick be afforded an evidentiary hearing to control the department's exercise of discretion.

## II.

Plaintiff urges that the comparative negligence principles announced in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], require reduction of the department's

[4]Section 14124.71, subdivision (a), provides in pertinent part: "When benefits are provided or will be provided to a [Medi-Cal] beneficiary . . . because of an injury for which another person is liable . . . the director shall have a right to recover from such person . . . the reasonable value of benefits so provided."

[5]Section 14124.74, subdivision (a), provides in pertinent part: "If the action or claim is prosecuted by the beneficiary alone, the court . . . shall first order paid from any judgment or award the reasonable litigation expenses incurred in preparation and prosecution of such action or claim, together with reasonable attorney's fees, when an attorney has been retained. After payment of such expenses and attorney's fees, the court . . . shall, on the application of the director, allow as a first lien against the amount of such judgment or award, the amount of the director's expenditures for the benefit of the beneficiary under the Medi-Cal Program [minus reduction for proportionate share of costs and attorney fees]. . . ."

lien by 80 percent since Patrick was assertedly 80 percent at fault for the accident which caused his injuries.[6]

Section 14124.78, enacted in 1976, one year after the decision in *Li* v. *Yellow Cab Co., supra,* provides: "Except as otherwise provided in this article, notwithstanding any other provision of law, *the entire amount* of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the director's claim for reimbursement of the benefits provided and any lien filed pursuant thereto, but in no event shall the director's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." (Italics added.)

Certainly on its face the statute gives no hint of any legislative intent to reduce Medi-Cal liens in proportion to the percentage of fault attributable to the affected Medi-Cal beneficiary. Nor is there any other provision in the third party liability article (§ 14124.70 et seq.) which so suggests. We presume, when we construe a legislative enactment, that the Legislature was aware of cognate judicial decisions and that it enacted new statutes and amendments in light thereof. (*In re Cox* (1970) 3 Cal.3d 205, 215 [90 Cal.Rptr. 24, 474 P.2d 992]; *Kadota* v. *City & County of S.F.* (1958) 166 Cal.App.2d 194, 195 [333 P.2d 75]; 45 Cal.Jur.2d, Statutes, § 101, pp. 615-616.) We are confident that had the Legislature intended in some manner to extend comparative negligence principles so as to effect a reduction in Medi-Cal liens against awards recovered by contributorily negligent Medi-Cal beneficiaries, it would have expressly so provided. It is not our function so to rewrite the law.

Moreover, plaintiff's argument rests on a fundamental misconception of the department's status as lien claimant, for in effect, plaintiff seeks to impute Patrick's negligence to the department. While such a result might be appropriate if the department were a subrogee standing in Patrick's shoes, the statute does not employ a subrogation scheme for recoupment of Medi-Cal benefits. Rather, it gives the department a direct right of action (§ 14124.71, subd. (a)), assertable as a lien against judgment or settlement proceeds (§§ 14124.74, 14124.78), for recovery of monies spent to treat indigent tort victims. The department's right is akin to that of Patrick's creditor to recover payment for a debt Patrick incurred when, having received injuries for which the tortfeasor might be liable, he

---

[6]We must accept plaintiff's 80/20 percent allocation of fault as accurate for purposes of reviewing the order granting judgment on the pleadings. (*Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d at p. 714, fn. 3.)

accepted treatment for which Medi-Cal paid. (See *State Comp. Ins. Fund v. Williams* (1974) 38 Cal.App.3d 218, 222 [112 Cal.Rptr. 226], similarly characterizing rights of lien-claimant employer against third party tortfeasor in context of analogous workers' compensation statutory scheme.) Although the department's actual recovery of payment for the debt is conditioned on the existence of a fund created from a judgment or settlement, the department's right to recover is independent of Patrick's right—not derivative therefrom. Accordingly there is no basis for imputation to the department of Patrick's negligence and its lien need not be reduced by the percentage of fault attributable to him.

The judgment is affirmed.

Evans, J., and Reynoso, J., concurred.

A petition for a rehearing was denied April 11, 1979, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1979. Newman, J., was of the opinion that the petition should be granted.